UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| CRYSTAL RED HAWK,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | 3:17-CV-03002-RAL<br><br><br>OPINION AND ORDER SCREENING AND DISMISSING § 2255 MOTION BUT GRANTING IFP STATUS ON APPEAL |
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CRYSTAL RED HAWK,<br><br>Defendant. | 3:14-CR-30001-RAL |

Crystal Red Hawk, together with her co-defendants BillyRay McCloskey and Riley McCloskey, were indicted for two counts of second degree murder for the December of 2013 killings of Benjamin Clifford and Calvin Kills In Water, Jr. on the Rosebud Indian Reservation. CR Doc. 29.[1] This Court appointed attorney Christina L. Klinger to represent Red Hawk. CR Doc. 49. A superseding indictment changed the charges against Red Hawk and her co-defendants to two counts of first degree murder, two counts of kidnapping, tampering with evidence, interstate transportation of a stolen automobile, and larceny. CR Doc. 67.

Around Christmas of 2013, Benjamin Clifford and Calvin Kills in Water, Jr. went missing. While Clifford's family was looking for him, Red Hawk was driving Clifford's car on the Rosebud Indian

---

[1] Citations to documents in the underlying criminal case of 14-CR-30001-RAL will use "CR Doc." followed by the document number.

1

Reservation. When questioned about Clifford's whereabouts, Red Hawk initially claimed that Clifford was alive and staying at various residences, but later admitted having a role in the murders of Clifford and Kills In Water.

When arrested, Red Hawk's co-defendants BillyRay McCloskey (BillyRay) and Riley McCloskey (Riley) were more cooperative and candid with law enforcement. In brief, on December 23, 2013, Clifford, a grandfather substantially older than Red Hawk and her co-defendants, gave Red Hawk, BillyRay, Kills In Water, and Orville Good Voice a ride to a residence in St. Francis, South Dakota, on the Rosebud Indian Reservation. Red Hawk, BillyRay, and Kills in Water stayed up drinking alcohol. Clifford and Good Voice went to sleep in the residence. BillyRay became angry with Kills In Water and beat him with his hands, feet, knees and elbows to the point where Kills In Water was bloodied and unconscious. Red Hawk witnessed the assault. Riley, who was BillyRay's younger brother, arrived at the home shortly after the assault (or before the assault if Red Hawk is believed). Red Hawk, BillyRay, and Riley decided to remove Kills In Water from the home using Clifford's car. Red Hawk awoke Clifford to get his keys, but Clifford did not want to give his keys to Red Hawk. Rather, Clifford insisted on driving. Meanwhile, BillyRay and Riley walked Kills In Water, who was at best semi-conscious and may have been partially wrapped in a shower curtain or blanket, to Clifford's car. BillyRay and Riley loaded Kills In Water in the backseat of the car and sat in the back seat with him.

Clifford upon seeing Kills In Water's condition wanted to take him to a hospital, but Red Hawk, BillyRay, and Riley did not want him to do that. Red Hawk was sitting in the front passenger seat and directed Clifford to drive to a residence in St. Francis, ostensibly to drop Kills In Water off so he could get care. There is no hospital in the community of St. Francis. When Clifford arrived at the residence, he honked the horn. BillyRay then reached over the seat and put Clifford in a chokehold. Clifford laid on the horn and Red Hawk hit Clifford in the groin and leg as BillyRay choked Clifford to unconsciousness and pulled him partially into the backseat. It does not appear that Clifford ever regained consciousness.

Red Hawk then moved to the driver's seat and drove Clifford's car away from the residence and just south of St. Francis.[2]

Kills In Water began stirring in the backseat. BillyRay found a Phillips screwdriver in the car and stabbed Kills In Water multiple times in the chest in the backseat of the car. Red Hawk drove Clifford's car south toward the South Dakota–Nebraska state line. Red Hawk turned onto a rural road and drove toward a gated pasture in Cherry County, Nebraska. BillyRay opened the gate, and Red Hawk drove several hundred feet toward a tree grove. According to both BillyRay and Riley, BillyRay asked Riley for help removing the bodies from the car, but Riley refused so Red Hawk helped BillyRay move the bodies. Red Hawk maintains that she did not assist in moving the bodies, other than moving the front seat forward to allow more room. According to Red Hawk, she stayed in the car when first Clifford and then Kills In Water were removed from the car. In the nearby grove of trees, BillyRay stabbed Clifford multiple times with the screwdriver to assure his death and then did the same to Kills In Water.

Red Hawk then drove with BillyRay and Riley to Valentine, Nebraska. Riley was to steal a vehicle and transport Red Hawk and BillyRay back to the Rosebud Indian Reservation, thereby abandoning Clifford's vehicle in Nebraska. Instead, Riley stole a vehicle and ditched BillyRay and Red Hawk. Red Hawk and BillyRay used Clifford's vehicle to return home, where they cleaned the residence where BillyRay had assaulted Kills In Water. They cleaned Clifford's car in White River, South Dakota. Red Hawk was to ditch Clifford's car, but instead chose to continue using it.

Upon his arrest, BillyRay showed police where the bodies were and admitted to being the one who assaulted and stabbed Kills In Water, and the one who choked and stabbed Clifford. Upon his arrest, Riley assisted police in locating the Phillips screwdriver his brother used as the murder weapon in a rural ditch where either BillyRay or Red Hawk had pitched it, and admitted to his involvement and the car theft

---

[2] Red Hawk claimed that BillyRay drove the vehicle, but BillyRay and Riley say that Red Hawk drove. Given what BillyRay was doing in the vehicle, it is far more plausible that Red Hawk was driving.

3

in Nebraska. BillyRay[3] received two life sentences. CR Doc. 141. Riley[4] received two 210-month sentences to serve concurrently, CR Doc. 143, but committed suicide while in Bureau of Prisons custody.

Red Hawk entered into a plea agreement under which she agreed to plead guilty to two counts of second degree murder in a superseding information and in exchange the United States would dismiss the charges in the superseding indictment against her, and would remain silent at sentencing as to whether her prison terms on the two murders should be served concurrently or consecutively. CR Doc. 129. The plea agreement contained a Waiver of Defenses and Appeal Rights provision stating:

> The Defendant hereby waives all defenses and her right to appeal any non-jurisdictional issues. The parties agree that excluded from this waiver is the Defendant's right to appeal any decision by the Court to depart upward pursuant to the sentencing guidelines as well as the length of her sentence for a determination of its substantive reasonableness should the Court impose an upward departure or an upward variance pursuant to 18 U.S.C. § 3553(a).

CR Doc. 129 at ¶ O.

Red Hawk appeared at a change of plea hearing on October 27, 2014, represented by counsel Klinger. Red Hawk gave answers to questions from this Court under oath. CR Doc. 196 at 2–3. Red Hawk expressed satisfaction with the counsel, advice, and representation by attorney Klinger early, CR Doc. 196 at 4, and late during the hearing, CR Doc. 196 at 17. As concerns the waiver of appeal provision, Red Hawk's testimony was:

> THE COURT: Do you realize that paragraph O of your Plea Agreement contains a waiver of defenses and a waiver of certain appeal rights? Do you have a copy of your Plea Agreement there in front of you?
> THE DEFENDANT: Yes.
> THE COURT: Do you see paragraph O of your Plea Agreement there?
> THE DEFENDANT: Yes.
> THE COURT: Do you understand that by pleading guilty, you are waiving all defenses and any right to appeal any non-jurisdictional issues? Do you understand that?
> THE DEFENDANT: Yes.
> THE COURT: Do you also understand that, in terms of the sentence, you are waiving your right to appeal from the sentence unless the Court varies or departs upward to sentence you more harshly than what the guidelines call for?
> THE DEFENDANT: Yes.

---

[3] BillyRay's guideline range was life in prison. CR Doc. 142.
[4] Riley's guideline range was 168 to 210 months, as his total offense level was 35 and his Criminal History Category was I. CR Doc. 144.

4

CR Doc. 196 at 13. Red Hawk then proceeded to plead guilty to two counts of second degree murder. CR Doc. 196 at 18-19.

This Court held a sentencing hearing for Red Hawk on January 20, 2015. Red Hawk's advisory guideline range was 292 to 365 months based on Red Hawk being in Criminal History Category IV and the total offense level being 37. CR Doc. 197 at 93-94. This Court explained at length its reasoning under the factors of 18 U.S.C. § 3553 before imposing a sentence of 300 months (25 years) on each count, served concurrently, followed by 5 years of supervised release. CR Doc. 197 at 91-104. At the conclusion of imposing sentence, this Court advised Red Hawk of her appeal rights as follows:

> Ms. Red Hawk, you can appeal your conviction, if you believe that your guilty plea was somehow unlawful or involuntary or if there is a fundamental defect in the proceedings that was not waived by the guilty plea.
> You can appeal from the sentence, particularly if you think the sentence is contrary to law; however, your plea agreement that you entered into contained language that waived certain rights to appeal in paragraph O of the Plea Agreement. Such waivers generally are enforceable. If you believe the waiver to be unenforceable, you can present that theory to the appellate court.
> With few exceptions, any notice of appeal must be filed within 14 calendar days of when Judgment enters in your case. If you are not able to pay the cost of an appeal, you may apply for leave to appeal in forma pauperis. If you so request, the Clerk of Court will prepare and file a notice of appeal on your behalf.

CR Doc. 197 at 104-05.

This Court signed the Judgment on January 21, 2015, CR Doc. 175, but had left restitution open for a period of 90 days during the sentencing. An Amended Judgment signed and filed February 25, 2015, awarded restitution of $22,700, and made payments jointly and severally the responsibility of the three defendants. CR Doc. 188. Red Hawk did not timely appeal from her conviction or sentence.

On January 25, 2017, more than two years after her sentencing hearing, Red Hawk sent this Court a letter stating:

> My name is Crystal Red Hawk; and, I am one of the Defendant's in the above-referenced case. I am writing this letter because I am in receipt of correspondence from my public defender (Ms. Christina L. Klinger), where she had stated that I need to contact the Clerk of Court's office, directly. (I had asked my public defender to file an appeal as soon as I had gotten sentenced; she refused.)
> Your Honor, I am contacting your office because one of my co-defendants (also the government's witness) has died. Your Honor, I do not believe that I was adequately assisted by my public defender. Please assist me with this matter.

5

CR Doc. 193; 17-CV-3002,[5] Doc. 1. The Clerk of Court docketed this letter as a notice of appeal in Red Hawk's criminal case and as a § 2255 motion in a new civil case. This Court had the Clerk of Court send to Red Hawk the form for filing a § 2255 motion, CIV Doc. 2, and Red Hawk completed and returned a formal Motion to Vacate, Set Aside or Correct Sentence Under 28 U.S.C. § 2255 (§ 2255 motion). CIV Doc. 3. Red Hawk's motion contains a single claim for ineffective assistance of counsel—that attorney Klinger refused Red Hawk's repeated requests after the sentencing hearing to file an appeal. CIV Doc. 3 at 4–5. Red Hawk does not mention what, if any, argument she wanted raised through an appeal of her sentence. See CIV Doc. 3.

28 U.S.C. § 2255 provides a means for a federal inmate like Red Hawk to seek to set aside a conviction and judgment. Section 2255(f), however, contains a one-year limitation period for bringing a § 2255 motion. Under § 2255(f)(1), that limitation period typically runs from "the date on which the judgment of conviction becomes final." Red Hawk's judgment of conviction became final, at the very latest, following the passage of her 14-day period to appeal from the February 15, 2015 Amended Judgment, which elapsed well over a year prior to her letter filed on January 25, 2017. Section 2255(f) recognizes other circumstances that may result in a different triggering of the one-year limitation period. However, none of those circumstances—government action as an impediment to filing, a right to relief recognized and made retroactive by the Supreme Court of the United States, and new discovery of facts supporting the claim not previously discoverable through exercise of due diligence—apply to Red Hawk's claim. Red Hawk knew from this Court's advice of rights how much time she had to appeal and, according to her § 2255 motion, knew that her attorney was not going to file an appeal for her. Thus, Red Hawk's § 2255 motion is time barred under § 2255(f).

Under Rule 4(b) of the Rules Governing Section 2255 Proceedings, "If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings, that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party." Because Red

---

[5] Documents filed in Red Hawk's civil case, 17-CV-3002-RAL, will be cited as "CIV Doc." followed by the document number.

Hawk's § 2255 motion is time barred, "it plainly appears . . . that [Red Hawk who is] the moving party is not entitled to relief," under Rule 4(b), thereby requiring dismissal.

Even if Red Hawk's § 2255 motion were not time barred, she still would not be entitled to relief. Under her plea agreement, Red Hawk agreed to waive any defenses and non-jurisdictional issues, and further agreed to waive her right to appeal from the sentence unless this Court varied or departed upward. CR Doc. 129. This Court sentenced Red Hawk within the guideline range without any departure or variance. CR Doc. 197 at 93–94; CR Doc. 174; CR Doc. 188. Red Hawk understood that appeal waiver, CR Doc. 196 at 13, and was advised of its existence both at the change of plea hearing and sentencing hearing, CR Doc. 196 at 13; CR Doc. 197 at 104–05.

The Sixth Amendment of the United States Constitution guarantees the right to effective assistance of counsel to defendants in prosecutions for serious crimes. To show ineffective assistance of counsel, a defendant must demonstrate: 1) that her lawyer's representation fell below an objective standard of reasonableness; and 2) that the lawyer's deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687–88, 692 (1984). Although failure to appeal when requested to do so can be ineffective assistance of counsel, Red Hawk has no possible means of establishing prejudice under the second requirement of the Strickland test. To establish prejudice to satisfy the second prong of the Strickland test, Red Hawk must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. The result of any appeal to the United States Court of Appeals for the Eighth Circuit would have been dismissal of the appeal due to Red Hawk's appeal waiver. See United States v. Azure, 571 F.3d 769, 772 (8th Cir. 2009) (explaining Eighth Circuit precedent that an appeal waiver provision in a plea agreement will be upheld so long as "the appeal falls within the scope of the waiver, and the defendant's accession to the plea agreement and the waiver was knowing and voluntary"); United States v. Boneshirt, 662 F.3d 509, 515–16 (8th Cir. 2011) (declining to enforce appeal waiver in plea agreement only where there had been no colloquy between the court and defendant about the waiver); United States v. Andis, 333 F.3d

7

886, 891–92 (8th Cir. 2003) (en banc) (finding only "an extremely narrow exception" to the general enforceability of an appeal waiver where the enforcement would result in a miscarriage of justice).

Red Hawk also has filed a Motion to Proceed without Prepayment of Fees and Declaration (IFP motion). CIV Doc. 4. There is no filing fee for a § 2255 motion, and her § 2255 motion is being denied and dismissed, so the motion is moot in the civil case. The Clerk of Court docketed Red Hawk's letter as an appeal in her criminal case and to the extent it matters in the criminal appeal, she is indigent and may proceed in forma pauperis. Therefore, it is hereby

ORDERED that Red Hawk's § 2255 motion is denied and dismissed and that no certificate of appealability issues. It is further

ORDERED that her IFP motion, CIV Doc. 4, is denied as moot in the civil case, but granted to the extent it may affect her appeal in the criminal case.

DATED this 8th day of March, 2017.

BY THE COURT:

ROBERTO A. LANGE
UNITED STATES DISTRICT JUDGE